UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE MENDENHALL, *et al.*, | No. C-11-4029 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND** |
| CITY AND COUNTY OF SAN FRANCISCO, | |
| Defendant. | **(Docket No. 13)** |
| _____/ | |

Plaintiffs Janice Mendenhall and Mark Cato filed suit against the City and County of San Francisco ("CCSF"), alleging employment discrimination under Title VII of the Civil Rights Act of 1964. Pending before the Court is CCSF's motion to dismiss, or in the alternative, for a more definite statement. Docket No. 13. After considering the parties' submissions and oral argument, and for the reasons set forth below, the Court **GRANTS** the motion to dismiss with leave to amend.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs filed a Title VII form complaint against CCSF. Docket No. 1. The complaint alleges that "DHS is withholding our case from us for [six years] now." It also alleges that they have suffered a loss of five years of work, and that they have been "civilly harassed by Department workers [and] Supervisors." Compl., Docket No. 1, at 2. The complaint further alleges the following: "I believe my family and I [were] discriminated against on the basis of race, and the fact that my husband was sexually harassed twice. Also that our family and case files [were] retaliated against in the Department as [a] 'hard case.'" *Id*. at 2.

1    The Complaint attaches a right-to-sue letter from the California Department of Fair
Employment and Housing ("DFEH")to Ms. Mendenhall and a Charge of Discrimination Ms.
Mendenhall filed with the EEOC on August 1, 2011. *See* Docket No. 1. In the Charge of
Discrimination, Plaintiff Mendenhall alleges that she was hired as a Sales Associate through the
Department of Human Services' ("DHS") Community Jobs Program in April 2008. She alleges that
she was harassed by Michael LNU from April 2008 to December 2008. Specifically, she alleges
that Michael would "constantly ask . . . about [her] whereabouts, follow [her] around, and randomly
show up at [her] job." He also at one point "asked [her] to ride in his car and accompany him to an
event outside of work." Plaintiff notes that she knows of other occasions on which Michael has
"propositioned other females in [her] department." While she reported this conduct to a supervisor,
Anna Keller, she asserts that "no action was taken."

   Plaintiff Mendenhall alleges that she was "unjustly discharged" by Michael in December
2008. She further alleges that a hearing was held January 25, 2011, "to review [her] pending case,"
which she was not allowed to attend. She has requested a rehearing, but has received no response.
She alleges that she was discriminated against on the basis of race and sex in violation of Title VII
of the Civil Rights Act of 1964. She also alleges a retaliation claim.

   Regarding Plaintiff Cato, the complaint states only that he "was sexually harassed twice," but
does not provide any other details. *See* Compl. at 2 ¶ 6.

   Defendant CCSF filed a motion to dismiss Plaintiffs' complaint in its entirety, arguing that
Plaintiffs' claims were untimely and that they failed to state a plausible claim for relief. This motion
is now pending before the Court.

## II. DISCUSSION

A.  Legal Standard

   A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim,
facilitating dismissal to the extent the pleading fails to state a claim upon which relief can be
granted. Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short
and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp.*

2

*v. Twombly*, 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). The pleading is construed in the light most favorable to the non-moving party and all material allegations in it are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir.1986).

However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Under *Twombly*, a plaintiff (or counterclaimant) must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted). In sum, if the facts alleged foster a reasonable inference of liability - stronger than a mere possibility - the claim survives; if they do not, the claim must be dismissed. *See Iqbal*, 129 S. Ct. at 1949-50.

Ordinarily, a pro se complaint will be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The pro se complaint will be dismissed only if it appears "beyond a reasonable doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Pena*, 976 F.2d at 471 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). As the Ninth Circuit has recently clarified, courts "continue to construe pro se filings liberally when evaluating them under *Iqbal*. While the standard is higher, our 'obligation' remains, 'where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)). However, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.").

B.  <u>Motion to Dismiss</u>

In the instant case, Plaintiffs' main problem is that their complaint, as it currently stands, does not allege facts that would show their claim is timely. In addition, even if timely, the current version of the complaint fails to state a plausible claim for relief against CCSF.

1.  <u>Failure to File Timely Charge of Discrimination</u>

CCSF argues that Plaintiffs' claims are untimely because they failed to file a timely administrative charge with the EEOC or DFEH before initiating a lawsuit. *See* Mot. at 5 (citing 42 U.S.C. § 2000e-5(f)(1); *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (1994) ("To establish federal subject matter jurisdiction, [a plaintiff is] required to exhaust her EEOC administrative remedies before seeking federal adjudication of her claims.") (internal citations omitted)). CCSF is correct that an EEOC charge must be filed, at the latest, no less than 300 days after the alleged unlawful conduct occurred. 42 U.S.C. § 2000e-5(e)(1)). Since the alleged harassment occurred over three years ago, unless Plaintiffs can show that they brought charges earlier, their claims are barred as untimely.

First, with respect to Plaintiff Cato, the complaint contains no allegation that Cato filed an administrative charge with the EEOC or DFEH at any time, let alone within the required time period. While Mr. Cato mentioned at oral argument that he had filed certain charges previously and

4

complained to other authorities, none of those actions are mentioned or described in the complaint, nor are any letters from the City or state or federal agencies regarding his claims attached to the complaint. For example, Mr. Cato stated that he had contacted CCSF immediately after the incidents occurred, and that Mr. Cato was told that someone "would take care of it." However, it was unclear to the Court who specifically Mr. Cato spoke to, when he spoke to that person, where that person worked, and what, if anything, Mr. Cato did to follow up on those communications. Mr. Cato also indicated that he spoke to someone at Bay Area Legal Aid, but Bay Area Legal Aid is not part of the City and County of San Francisco. Even if these oral representations were made part of the complaint, they would not establish Mr. Cato filed charges of employment discrimination with the EEOC or DFEH, a requirement to bring a Title VII claim.

Second, with respect to Plaintiff Mendenhall, her claim also appears untimely. While the allegedly harassing conduct and employment termination occurred in 2008, Ms. Mendenhall did not file her EEOC charge until August 2011, well beyond the 300-day deadline.

Although Plaintiffs refer to a hearing on their "pending case" which occurred on January 25, 2011, *see* Compl. at 2, the hearing to which Plaintiff Mendenhall refers was a hearing before an Administrative Law Judge ("ALJ") for the California Department of Social Services ("CDSS"). *See* Mot., Docket No. 13, Ex. A (ALJ's proposed decision, adopted by CDSS).[1] This hearing considered Plaintiff Mendenhall's claim for CalWORKS benefits for her second child, which CCSF had denied. CDSS denied Mendenhall's claim on March 15, 2011. *Id.* The record from this hearing provides no indication that Plaintiffs had filed administrative charges of employment discrimination with the EEOC or DFEH within the required time period (*i.e.*, 300 days of the 2008 employment incidents). The hearing appears to pertain to welfare benefits, not employment discrimination. These are two different matters addressed by different sets of laws.

Accordingly, the Court **GRANTS** CCSF's motion to dismiss Plaintiffs' complaint as untimely because, based on the record before the Court, Plaintiffs failed to file an administrative charge with the EEOC or DFEH within 300 days of the incidents occurring in 2008. However, the

---

[1] Judicial notice of these documents is appropriate as they are referenced in the complaint. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Court will give Plaintiffs a chance to amend their complaint to describe how these employment discrimination claims were timely filed.

###    2.    Failure to State a Claim

In addition to timeliness, Plaintiffs' Complaint currently does not plausibly state a claim for employment discrimination. Title VII makes it unlawful for employers

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1), (2). To establish a claim for relief under Title VII, a plaintiff must first establish a *prima facie* case of discrimination by showing that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) (additional citations omitted). While Plaintiffs need not include facts sufficient to establish a *prima facie* case in their complaint, they do need to allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citing with approval *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002), "which held that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination under the [*McDonnell Douglas*] framework'").

Under this standard, Plaintiffs have so far failed to state a plausible claim for relief. First, neither Plaintiff alleges that he or she worked as *employees* of CCSF, or that their alleged harassment arose out of their employment by CCSF. Plaintiffs must allege some kind of

6

employment relationship with CCSF, though the relationship need not be direct. *See Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir.1980); *see also King v. Corcoran State Prison*, No. 1:10-cv-00878-LJO-SKO, 2011 WL 2295035, at *2 (E.D. Cal. June 9, 2011) ("With only limited exceptions . . . , the employer charged with discrimination under Title VII must have been the plaintiff's employer at the time of the alleged discrimination for plaintiff to prevail.") (citing *City of L.A. v. Manhart*, 435 U.S. 702, 718 n. 33 (1978)). "The extent of [CCSF's] right to control the means and manner of the worker's performance is a primary factor" in determining whether CCSF could be considered Plaintiffs' employer. *Lutcher*, 633 F.2d at 883. However, if CCSF was not the direct employer, Title VII liability may under certain circumstances be established by alleging it interfered with plaintiff's employment relationship with a third party in a discriminatory way. *See E.E.O.C. v. Pacific Maritime Ass'n*, 351 F.3d 1270, 1274 (9th Cir. 2003) ("Liability as an indirect employer requires that the employer have some peculiar control over the employee's relationship with the direct employer and that the indirect employer engage in discriminatory interference.") (internal citations and quotation marks omitted). A plaintiff may also allege that an entity was a joint employer if it exercised "control [over] the terms and conditions of employment of the employee." *Id.* at 1275 (citations omitted).[2]

In this case, Plaintiff Mendenhall states only that she was hired "through" the DHS Community Jobs program, but she does not explain for whom she worked or whether such job was with the City or any of its departments. In addition, Ms. Mendenhall's Charge of Discrimination indicates that the alleged harasser, Michael LNU, did not work with her as she alleges that he would "randomly show up at [her] job." Docket No. 1. There is no indication Michael LNU was a CCSF employee or that CCSF was somehow responsible for his conduct other than having referred Ms. Mendenhall to the employer.

---

[2] "In considering joint-employer status, the Ninth Circuit applies an 'economic reality test' that 'considers all factors relevant to the particular situation.' For example, the Ninth Circuit has considered whether the joint employer (1) supervised the employee, (2) had the power to hire and fire him, (3) had the power to discipline him, and (4) supervised, monitored and/or controlled his work site." *King*, 2011 WL 2295035 at *2 (quoting *E.E.O.C. v. Pacific Maritime Ass'n*, 351 F.3d at 1275-77; citing *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 927 (9th Cir.2003)).

1  Similarly, Plaintiff Cato offers no facts establishing where and in what capacity he worked.
2 He mentioned at oral argument that he worked at the YMCA at some point, and that the alleged
3 harassment took place there. However, these facts are not in the complaint. In addition, the YMCA
4 is not part of CCSF. Plaintiffs argued at the hearing herein that CCSF was Mr. Cato's employer
5 because CCSF paid for his employment at the YMCA, but the fact that CCSF paid Plaintiffs'
6 welfare benefits and required him to work does not necessarily make CCSF an employer for the
7 purposes of Title VII. Mr. Cato must allege sufficient facts to show that CCSF actually controlled
8 the manner and means of his employment as described above. To the extent that the harassment
9 occurred solely at the hands of a YMCA employee, CCSF would not be liable for such conduct
10 unless Mr. Cato can allege facts that would show that CCSF was his indirect or joint employer under
11 Title VII law. Again, the current version of the complaint falls far short of alleging such a
12 relationship.

13  Second, beyond failing to explain where they worked and the nature of any employment
14 relationship with CCSF, Plaintiffs also fail to allege any facts surrounding their termination from
15 employment or other adverse actions taken against them. This is especially true of Plaintiff Cato,
16 who merely claims to have been sexually harassed but provides no details in the complaint as to
17 how, when or by whom, or what happened to him as a result of that harassment. While Plaintiff
18 Mendenhall offers a bit more factual detail, it is still not sufficient for the Court to determine what
19 the harassment was, how the alleged harasser was connected to her employment, and how the
20 harassment affected her employment.

21  Accordingly, the Court **GRANTS** CCSF's motion to dismiss for failure to state a claim.
22 However, the Court will grant Plaintiffs an opportunity to amend their complaint and attempt to
23 allege any facts that might demonstrate (a) an employment relationship with CCSF; and (b) the
24 nature of the alleged harassment and how it adversely affected them in the context of their
25 employment.

### III.  CONCLUSION

27  For the foregoing reasons, the Court **GRANTS** Defendant CCSF's motion to dismiss
28 Plaintiffs' complaint, and grants Plaintiffs an opportunity to file an amended complaint. If Plaintiffs

8

choose to file an amended complaint, they must do so no later than **January 20, 2012**. Any amended complaint should include the following, to the extent possible based on the facts surrounding Plaintiffs' claims:

First, Plaintiffs must attempt to describe facts that would show that each of them filed administrative charges with the EEOC or DFEH within 300 days of the incidents that occurred in 2008. If Plaintiffs received any right-to-sue letters from state or federal agencies, they should describe any correspondence with those agencies and attach copies of those letters to the amended complaint as exhibits.

Second, Plaintiffs must attempt to allege facts sufficient to state a claim for relief. As explained above, Plaintiffs' current complaint does not do so because they have not included sufficient facts in their complaint describing where they worked and how CCSF could be considered their employer, directly or indirectly. Plaintiffs must also describe the actual facts of the alleged harassment, including who harassed them, when, on what basis, how the harassment adversely affected their employment status, etc.

Finally, the Court notes that Plaintiffs' primary dissatisfaction with CCSF appears to be its denial of their welfare benefits. As CCSF points out, Plaintiffs' cover sheet indicates that they are suing over "welfare" civil rights. *See* Docket No. 1-1. Plaintiffs noted again at oral argument that they were upset over CCSF's denial of welfare benefits for their second child. The Court cautions Plaintiffs that to the extent they are dissatisfied with the way the City's welfare or Community Jobs Program has been run – for example, the fact that Mr. Cato was sent to one place over another or the fact that he faced a potential sanction and denial of benefits – that is a denial of benefits claim, not an employment discrimination claim. Moreover, to the extent Plaintiffs seek to bring a denial of benefits claim rather than an employment discrimination claim, the lawsuit does not belong in federal court unless Plaintiffs can state a federal basis for such a claim.

///
///
///
///

For Plaintiffs' benefit, the Court directs their attention to the Court's Handbook for Pro Se Litigants, which is available along with further information for the parties on the Court's website located at http://www.cand.uscourts.gov./proselitigants. Plaintiffs are also encouraged to contact the Legal Help Center, 450 Golden Gate Avenue, Room 2786, Telephone No. (415) 782-9000 extension 8657 for free legal advice.

This order disposes of Docket No. 13.

IT IS SO ORDERED.

Dated: December 27, 2011

_____
EDWARD M. CHEN
United States District Judge